Good morning, Your Honor. Let me please the Court. Robert W. Scott appearing on behalf of the Petitioner-Appellant Richard Bennett. I'd like to reserve, if you will, a few minutes for rebuttal. The certificate of appealability issue in this case was whether the Miranda warnings given mid-interrogation after Petitioner-Appellant Bennett gave an unwarned confession were ineffective, thereby making Bennett's subsequent post-Miranda confession inadmissible at trial, citing Missouri v. Siebert. I'd like to say at the outset that my case is on all fours with Missouri v. Siebert. And in Missouri v. Siebert, the confession was suppressed. And the reason the confession was suppressed is that... ...sort of deprecates Miranda. So this is just something that's a formality, the infamous card. And then he eventually gives the Miranda warning, leaving out a little bit of it. And bang, bang, he says, what happened that night? And your client says, I took whatever property it was that was taken. I know that it is inferred when you answer questions after you get Miranda that you probably waived Miranda. Is there any kind of basis to claim there's no waiver here? Is that an issue that might be considered here? Yes, Your Honor, because of the coercive circumstances used in this case. In Siebert, the court held five members of the United States Supreme Court... Assume that Siebert isn't applied retroactively, then where are we? Well, no problem, Your Honor. Teague doesn't apply here because if you read Siebert, all it talks about is Westover, Miranda, and its companion case of Westover. Siebert is merely an application of Miranda and Westover to this case, to the two-step procedure which the police use to compel the defendant to give an unworn confession. And then later they lead him, after they warn him, they remind him that the cat was out of the bag, that he already gave the other confession, and they get him to give the new confession, just like they did in this case. When before the police says, well, we're off the card, the infamous card, they reminded him that down in the booking area he had confessed to that, but they didn't warn him, give him warning then. And then when they took him up to the detective bureau, they reminded him again of his unworn confession, and then they says, okay, now we're going to do it off the infamous card, and they warned him. And surprise, surprise, he confesses. And that's what was criticized about the two-step procedure. It's an intentional circumvention of Miranda. Well, Siebert said it's a two-step procedure, isn't that it? Yes, and that was exactly the procedure. But if Siebert does not apply retroactively, and I think there's a very serious question whether it does or not, but let's suppose it does not apply retroactively, then don't you get back to, is it Elstead where the Supreme Court said that if they had earlier asked him some questions and then gave him the Miranda rights, then asked the questions again, that that was okay? Yes. Was it at Elstead? Yes, but Elstead was entirely different from this case, entirely different. This was a deliberate failure to warn. That's what the two-step procedure is, a deliberate failure to warn. In Elstead, it was inadvertent. The police went to Mr. Elstead's house with a warrant, and they were talking to his mother. They're going to arrest him, and they say, we think he was there at the time of the burglary. And Elstead pops up and says, yeah, I was. So that was the unworn confession. He wasn't in custody. He wasn't in a coercive circumstance. He wasn't in his house. There was no coercion in Elstead. So the State Appellate Court was entirely wrong in applying Elstead to this case because it was an inadvertent case. In Elstead, they even condemned, Elstead even condemned exploiting the unworn confession to obtain the worn confession. What were the deliberately coercive or improper tactics used in this case? They failed to warn him of his Miranda rights in the booking area when they got a confession from him. Two detectives are booking a defendant, a clerical procedure. Of course, they were there to try to get a statement out of him. Then they got him to agree to go up to the detective area and on a videotape make his confession. And before the videotape starts, they get him to make another confession. They said, you did it, didn't you? You told us down there you did it. Yeah, I did it. And then they give him the Miranda warnings, and the tape is running. And he goes over the same area again, which is what all five justices of the Supreme Court condemned as an improper procedure. And we have no Miranda's great law. The problem is that the State Appellate Court completely ignored Miranda and Westover. It had an excellent brief from the appellate attorney, Michael Dasjian, who talked about they were exploiting the unwarned confession, just like Miranda and Westover condemned. And they completely ignored it, and they talked about just about Elstead. The recent case of Edgar Cooper. You say Elstead was the clearly established federal law announced by the Supreme Court at the time this occurred? Yeah, yeah. In 1999, at the time of the State Appellate Court decision, Miranda and his companion case, Westover, had been decided in 1966. So those principles, which are applied in Siebert, should have been applied by the court. And since the appellate court failed to recognize the jurisdiction of these cases, Abdul Kabir v. Cotterman, which I cited in my brief, states that the writ should have been granted. Does Westover really help you? Yes, yes, because Westover says that when you have interrogation under coercive circumstances, what could be more coercive than a jail with two police officers talking to you, and you give statements, two statements close in time, you cannot assume a waiver of constitutional rights. You have to do more than that. And Westover says that in those situations, what you have to do to purge the taint of the second confession from the first confession, the first improperly obtained confession, you have to remove it in time. You have to go to a different place and give them a fully advised confession. I'm sorry, fully advised Miranda rights. If you wanted to reserve some time, you're going to run out of it. You wanted to reserve some time. You're about to run out, so maybe you should just wait and sit down and listen to what your opponent has to say and then. Thank you, Your Honor. Thank you.  May it please the Court. I am Kevin Vienna, Deputy Attorney General for the State of California, representing a Pelley respondent in this matter. Mr. Bennett must overcome four hurdles in order to receive relief in this case. He can overcome none of the four. The first is he has to show that the error, if there was one, was harmless. The Court, I believe, may have noted that in the reply brief, doesn't bother to address my argument that any error had to be harmless. And it had to in this case because Mr. Bennett was seen leaving the scene of the crime, carrying a basket taken from the scene of the crime with the cord from the VCR protruding from the basket. That would have been enough to convict him. But that's not all there was. In addition, there was a search of his mother's apartment where he was residing shortly afterwards, at which the police found the VCR and several pieces of jewelry that were taken from the apartment, from the Bocax apartment just a few minutes before. And, well, in those circumstances, no jury in the United States would not have convicted him. He cannot meet the Brecht standard here. But his own statement is much more damaging than that evidence, wouldn't you say? Yes, it is, Your Honor, and that was my next point. That is, he took the witness stand in his trial and said, I did it. So, the fact- What was his defense? His defense was, he had no defense, Your Honor. He was charged with four felonies. He was a facing, he was a third-strike defendant. Two of the felonies were a DUI and possession of heroin crime that arose in December of 1994. On April 7th of 1995, he broke into another apartment in his mother's apartment complex using the same memo. That is, he kicked the door down, ransacked the apartment. His fingerprint was found on the dresser. There was no explanation other than him being the perpetrator of the burglary, committed that. So there were three felonies for which there was essentially no defense. And then there was this fourth felony, April 18th, a couple weeks later, where he burgled the Bohax apartment, and he was seen leaving the apartment with the stolen goods, and those stolen goods were found in his possession in his mother's apartment. So there's just no chance that he was not going to be convicted on all four of those. His defense really was, he framed his defense as lack of specific intent because of the drug addiction, but his defense was an opportunity for him to explain his lifetime of drug addiction in order to support a request that the court dismiss in its discretion one of the strike offenses so he could avoid four consecutive terms of 25 years to life. And the court did just that. That defense was effective. This is not a pre-AEDPA case, right? This is an AEDPA case. Okay. So really what we should be, we should be looking at it through the AEDPA standard and examining the last reason decision of the state court. Thank you. I began with harmless error because there's been no response to it, and I don't think there can be. But there are three difficulties related to AEDPA that he can't get over as well. The first is that this theory of Seabrook really was never developed in the state courts and is unexhausted. In the United States v. Williams, this court noted that a late arising Seabrook claim had to be remanded to the district court for development of the facts to find if there had been a deliberate two-step. Mr. Bennett argues but has never proved that there was a deliberate two-step. In fact, the facts of this case suggest that what happened in the booking area was a spontaneous declaration. That's what my preceding counsel argued in our answer. There was a spontaneous declaration. But that was never thoroughly examined because it was clear to the parties and to the trial court that what mattered in this case, that what mattered was ELSTAT. And the only real question then for the admissibility of the later statement was voluntariness. So the facts have never been developed in the district court or anywhere. Do you think there was a waiver of Miranda here? There was an effective waiver of Miranda. The officer never said to him, do you waive your rights? Bang, he hit him. What happened that night? Your Honor, I think there was – well, the law is that the waiver can be implicit and it was addressed by the – Is it implicit where the detective goes through the procedures which I addressed to your opposing counsel and then bang, what happened that night? Never gives him a chance to waive or claim his Miranda rights or anything. He just – it's one question after another if you look at the transcript. I agree with your recitation of those facts. Two points I would make. The first is that Mr. Bennett had already said he intended to speak. That is, in the booking area where I believe, although the record wasn't very well developed. That's before he gets Miranda. But this was an individual very familiar with the criminal justice system. He had numerous prior convictions, including two prior felonies, and he couldn't wait really to tell the officer that he'd committed the second burglary. But that record was not developed thoroughly in the state court, and, in fact, the record is somewhat unclear about how he happens to blurt out, yes, I took the VCR. But, in any event, the question about whether the warning was effective, that is, whether there was an effective waiver of Miranda rights, was addressed by the state court, and their determination was a reasonable determination under the AEDPA. Have I answered your question, Your Honor? Don't use all your time upon that issue. I don't know that that totally resolves the problem in my mind, but I don't want you to use all your time upon that. Thank you, Your Honor. Well, I would say simply that three state courts, the trial court and the court of appeal, in a reasoned decision said that the waiver was effective, and the California Supreme Court agreed. What is the basis for claiming there was a waiver, just because he answered that next question? Yes, his response, Your Honor. What about the issue of whether the failure to Mirandize was inadvertent? Your Honor, opposing counsel says it was inadvertent in Elstad. Actually, in Elstad it was more advertent, or at least similarly advertent to this case. In Elstad, at 470 U.S., page 301, they describe what happens in Mr. Elstad's house. The officer sat down with Mr. Elstad and asked him if he was aware of why the two detectives was there. He stated no, he had no idea. The officer said, well, asked him if he knew the person in the neighborhood who had been the victim of the burglary. And then at that point, the detective said to Mr. Elstad, a minor, I felt he was involved in that. He accused Elstad of the crime, and Elstad said, yes, I did it. That is, well, it is no more inadvertent than what happened in this case. In fact, it's quite similar. You better touch on anything else you want. Two other points. Well, if the facts have not been developed on deliberate two-step in the district court, they certainly were never developed in the state court, and under AEDPA it's too late to do that now, under 2254E, because it was his failure to develop them in the state court. He cannot go back to the state court, cannot anywhere develop them. Finally, under AEDPA, this court's decision in Orso makes it quite clear that what the state court did was a reasonable application of existing Supreme Court precedent. Orso said quite clearly that the issue in pre-Mirandi statement and post-Mirandi statement is to examine the question of voluntariness. That's Elstad. That's Elstad, yes, Your Honor. And Orso said, Elstad did that, Orso interpreted it, and made that about as clear as it could be. Certainly it was reasonable. And that's what the state court did? Exactly. Applied Elstad explicitly and used exactly the same approach that this court later took in Orso. Now, I'm not saying that Orso was binding precedent on the state court. Of course it wasn't. It didn't exist then. But Orso makes clear that what the state did was reasonable. Suppose that's not good enough under Siebert? And Siebert can't be applied retroactively. Because? Because of Teague and because of what? Because of Teague. Because of Teague. Siebert is a new rule. But also, Siebert arose four or five years after the state courts were looking at this case. Well, then the question is, well, that's after the state court looked into it. Yes, Your Honor. But should Siebert then have been applied by our district court? It can't, Your Honor. Under AEDPA analysis, the question for the district court was whether this new rule that's not a why, it's a procedural new rule that's not a watershed. It's barred by Teague, and also it's barred by AEDPA analysis, because under the AEDPA the federal district court asked whether the state court reasonably applied existing Supreme Court precedent at the time of the state court decision. Or at the time of the state, up until the time the state court decision is final. And that was years before Siebert. That probably consumes my time if there are no further questions. Thank you, counsel. Thank you. Yes, with all due respect to opposing counsel, Your Honor, I would decide on behalf, my behalf, that the Siebert court, five justices at least therein, found that the failure to warn in Siebert was, the failure to warn in Elstead was inadvertent. As far as developing the record in the lower court, in evidence there is a transcript of the videotape confession, which shows the officer before he mirandizes the defendant, he says, you admitted to me in the booking area that you took the VCR, right? He says, right. Okay. He asked him a question. He didn't mirandize. Then he proceeds to mirandize him. That is a deliberate failure to mirandize a subject. And, of course, he didn't mirandize him down in the booking area when, I don't know why two detectives took two detectives to book the defendant down there. Neither one of them could advise him when somehow or other they got a confession out of him. Of course, the client says they promised him that he wouldn't go to prison. Here's a three-strikes defendant getting a promise of a drug program, according to the defendant, in exchange for his confession, which is why he confessed. However, the officers denied that this actually happened. All right. Thank you, counsel. Thank you, Your Honor.
judges: Thompson, Wardlaw, Reed